# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

CORY E. YOUNG,

          Plaintiff,

vs.

ANDREW SAUL, Commissioner of
Social Security,

          Defendant.

No. 19-CV-2056-LRR-KEM

**REPORT AND
RECOMMENDATION**

———————————

Plaintiff Cory E. Young seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Young argues the administrative law judge (ALJ) should have included additional mental residual functional capacity (RFC) limitations reflecting his moderate limitations in concentration, persistence, or pace and the opinion of the consultative examiner. Young also argues that the ALJ should have found he suffered from a severe cognitive impairment and either included an RFC limitation to reasoning level one jobs or further developed the record regarding the effects of his cognitive impairment on his RFC. Young also challenges the ALJ's physical RFC assessment, arguing that the ALJ erred in failing to include a limitation reflecting his need to elevate his legs. Finally, Young raises (for the first time) an Appointments Clause challenge in reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). I recommend **reversing** the ALJ's decision and **remanding** for further proceedings.

## I. BACKGROUND

Young graduated from high school in 2002 with the aid of special education classes. AR 94, 386, 518.[1] He worked directing traffic on construction sites until 2007, and he also worked three hours a week as a janitor from 2004 to 2008, but he did not work enough hours or earn enough money at either of these jobs for them to constitute substantial gainful activity. AR 25, 261, 518. He previously filed for disability benefits in May 2008, which was denied on initial review in August 2008 and not appealed. AR 125.

Young did not work in the interim between the prior denial and when he filed the current application for SSI benefits on May 26, 2016, alleging disability since August 2008, which he later amended to the date of filing. AR 125, 261. When asked at the hearing about his lack of work history, he indicated that his felony conviction from 2003 made it hard for him to find employment. AR 102, 517. Young has lived with his mother his whole life, and she supports him financially. AR 95, 412. Young also shares custody of his teenage son, who lives with him every other week. AR 95.

Young alleged disability based on numerous physical impairments, as well as depression. AR 124-25. Because Young does not receive mental-health treatment, the Social Security Administration ordered a psychological consultative examination. Young met with psychologist Christine Guevara, PhD, in August 2016. AR 516-19. Dr. Guevara diagnosed Young with adjustment disorder with depressed mood, alcohol use disorder, and antisocial personality traits. AR 518. She determined that Young's mental impairments did not affect his ability to understand and follow instructions, to concentrate, or to keep pace, but she found him moderately limited in his ability to work with people and moderately to severely limited in his ability to use good judgment and respond appropriately to changes in the workplace. AR 519.

---

[1] "AR" refers to the administrative record below, filed at Docs. 8-2 to 8-8.

2

Young's SSI application was denied on initial review in November 2016 and on reconsideration in December 2016. AR 124-153. In connection with those reviews, state agency psychological consultants Philip Laughlin, PhD, and Scott Shafer, PhD, reviewed the evidence and determined that Young's mental impairments were not severe, rejecting Dr. Guevara's assessment. AR 129-30, 145-46.

Young requested review before an ALJ. From October 2016 to June 2017, he worked part time as a cook and dishwasher at a restaurant. AR 323, 393. Eventually, he was fired for taking too many breaks to sit down and rest. AR 101, 584.

The ALJ held an administrative hearing by video on July 17, 2018, at which Young and a vocational expert (VE) testified. AR 16, 89-90. On October 9, 2018, the ALJ issued a written decision following the familiar five-step process outlined in the regulations[2] to determine Young was not disabled from May 26, 2016, through the date of the decision. AR 16-26. At step one, the ALJ determined that Young's part-time work during the relevant time period did not constitute substantial gainful activity. AR 18. At step two, the ALJ determined Young suffered from the following severe impairments: morbid obesity (at the time of the hearing, Young was 5'8'' and weighed 430 pounds), diabetes, peripheral neuropathy, reconstructive surgery on a weight-bearing joint (based on Young's surgery on his left knee in 2010), spine disorder, affective disorder, personality disorder, and substance abuse disorder. AR 18, 100, 114. For

_____

[2] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 416.920**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

(Footnote continued . . .

purposes of evaluating Young's mental functioning at steps two and three, the ALJ performed the psychiatric review technique and found that Young suffered mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself. AR 19. The ALJ determined that despite his impairments, Young retained the following RFC[3]:

> [Young] has the [RFC] to perform light work . . . in that he can occasionally lift and or carry 20 pounds; can frequently lift and or carry 10 pounds; can stand and or walk 2 hours with normal breaks in an 8 hour day and sit for 6 hours in an 8 hour day with normal breaks; can push and pull and operate hand and foot controls on a frequent basis within the weight limits of 20 pounds occasionally and 10 pounds frequently; can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; would need to avoid concentrated exposure to extreme cold and hazards, such as dangerous machinery and heights; can frequently handle and finger bilaterally; limited to a job that can be learned in 30 days or less; and can have occasional contact with the public, co-workers, and supervisors.

AR 19; *see* **20 C.F.R. § 416.967(b)**. The ALJ determined that Young had no past relevant work but that a significant number of jobs existed in the national economy that someone with Young's age, education, work experience, and RFC could perform, including document preparer, weight tester, and addresser. AR 25-26.

Young appealed. The Appeals Council denied Young's request for review on July 1, 2019 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. *See* **20 C.F.R. § 416.1481**. Young filed a timely complaint in this court seeking judicial review of the Commissioner's decision (Docs. 1, 3). *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 10-12, 14), and the Honorable Linda R. Reade, United

---

[3] RFC means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 416.945(a)(1)**).

States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II.    DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**.  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707.  The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).  If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Young argues that the ALJ's RFC limiting him to jobs that can be learned in 30 days or less fails to account for his moderate limitations in concentration, persistence, or pace (as the ALJ noted for purposes of steps two and three), and fails to account for Dr. Guevara's opined limitations, which the ALJ assigned significant weight.  Young also argues that the ALJ erred at step two in failing to find he suffered from a cognitive impairment and that the ALJ erred in determining his RFC by failing to limit him to reasoning level one jobs or otherwise developing the record regarding the effects of his cognitive impairment on his mental functioning.  Young also challenges the ALJ's physical RFC determination, arguing that the ALJ erred in discounting his testimony regarding the need to elevate his legs.  Finally, Young argues that the ALJ's appointment to that position violates the Appointments Clause of the United States Constitution.

5

## A. Inconsistency Between VE Hypothetical and Moderate Deficiencies at Step Three

Young argues that the ALJ's hypothetical to the VE and corresponding RFC determination failed to account for limitations that the ALJ recognized for purposes of step two and three. To determine whether Young's mental impairments were severe (at step two) and whether they met or equaled a listing (at step three), the ALJ evaluated Young's functioning in the category of concentrating, persisting, or maintaining pace, finding Young moderately limited. AR 19. For purposes of steps four and five, the ALJ's VE hypothetical and RFC determination included only two mental-health limitations: Young would be "limited to a job that could be learned in 30 days or less" and he could "have occasional contact with the public, co-workers, and supervisors." AR 19, 119-20. Young argues that these limitations do not reflect his moderate limitations in concentrating, persisting, or maintaining pace that the ALJ recognized earlier in the sequential process.

Young relies on the Eighth Circuit's decisions in *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996), and *Scott v. Berryhill*, 855 F.3d 853 (8th Cir. 2017). In *Newton*, the ALJ found that the claimant had borderline intellectual functioning and noted on a "Psychiatric Review Technique Form" attached to the decision that the claimant "'often' had deficiencies of concentration, or persistence or pace." *Id.* at 691.[4] The Eighth

---

[4] "Often" suffering such limitations under the regulations in effect at the time of the *Newton* decision correlates to a finding of "moderate limitations" under the current regulations. *Compare* **20 C.F.R. § 416.920a(b)-(d)** (1996) *and* **20 C.F.R. § 404, Subpt. P., App. 1, § 12.00** (1996) (ALJ rated claimant's limitations in concentration, persistence, or pace for purposes of step three using five-point scale of "[n]ever, seldom, often, frequent, [or] constant"; and claimant met "paragraph B" criteria for most mental-health listings if the claimant suffered "frequent" limitations in concentration, persistence, or pace in addition to a marked limitation in another category), *with* **20 C.F.R. 404, Subpt. P., App. 1, § 12.00** (2018) (ALJ rates claimant's limitations in concentration, persistence, or pace for purposes of step three using five-point scale of "none, mild, moderate, marked, or extreme"; and claimant meets "paragraph B"

(Footnote continued . . .

Circuit held that the hypothetical posed to the VE did not adequately capture those deficiencies with limitations to "simple jobs" and "an inability to perform highly skilled or technical work." *Id.* at 694-95. Thus, the Eighth Circuit held that the VE testimony did not support the ALJ's step-five finding. *Id.* The court noted that "[t]here [wa]s no dispute in the medical evidence that [the claimant] suffer[ed] from deficiencies of concentration, persistence, or pace" and that the VE testified a "moderate deficiency in the[] areas [of concentration and persistence] would cause problems on an ongoing daily basis, 'regardless of . . . what the job required from a physical or skill standpoint." *Id.* at 695.

In *Scott*, the Eighth Circuit recognized that under *Newton*, "[a] hypothetical question that omits the effects of concentration, persistence, or pace deficiencies that the ALJ has found is not sufficient." 855 F.3d at 857.[5] But the court noted that "a sufficient hypothetical need not contain much more than the hypothetical at issue in *Newton*." *Id.* In *Scott*, the ALJ found at step three that the claimant suffered moderate limitations in concentration, persistence, or pace. *Id.* at 855. The Eighth Circuit held that the VE

---

criteria for mental-health listings if the claimant suffers at least two "marked" limitations); *see also* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, **65 Fed. Reg. 50746**, 50753 (Aug. 21, 2000) (noting that the seldom-often-frequent-etc. scale for "difficulties in maintaining concentration, persistence, or pace" was changed to the mild-moderate-marked-etc. scale "to parallel" the scales for the social-functioning and understanding-information categories).

[5] The Commissioner cites to several district court cases suggesting otherwise, but they were all issued prior to the Eighth Circuit's decision in *Scott*. *See Gann v. Colvin*, No. C14-4026-MWB, 2015 WL 1242706, at *26 (N.D. Iowa Mar. 18, 2015) (adopting report and recommendation) (not citing *Newton*); *Flint v. Colvin*, No. 13-cv-1220 (PAM/SER), 2014 WL 2818665, at *27 (D. Minn. June 23, 2014) (distinguishing *Newton* on the basis that "often" suffering a limitation is distinguishable from a "moderate" limitation; failing to acknowledge that under regulations in effect at time of *Newton*, often was third on a five-point scale just as moderate is third on the current five-point scale); *Daniels v. Astrue*, No. CV 12-407 (PAM/AJB), 2013 WL 1339350, at *15 (D. Minn. Feb. 6, 2013) (same), *report and recommendation adopted*, 2013 WL 1329028 (Apr. 1, 2013).

hypothetical "adequately captured the concrete consequences of [the claimant's] deficiencies" by limiting the claimant to unskilled work involving little independent judgment, "jobs with few variables," tasks that can be "learned and performed by rote," and supervision that is simple, direct, concrete, and brief. *Id.* at 855, 858. The court noted that the ALJ's discussion of the claimant's concentration, persistence, or pace deficiencies demonstrated "the lack of severity" of those deficiencies and that therefore, the limitations in the VE hypothetical "sufficiently captured the concrete consequences of [the claimant's] deficiencies." *Id.* at 858.

Here, the ALJ's VE hypothetical and RFC limited Young "to a job that could be learned in 30 days or less." The amount of time it takes the typical worker to learn a job is called the specific vocational preparation (SVP) level, and the Dictionary of Occupational Titles (DOT) lists each job's SVP level. **DOT, App. C**. Jobs with an SVP level of 1 require a "short demonstration only," while jobs with an SVP level of 2 involve more than a "short demonstration up to and including 1 month." *Id.* Thus, by limiting Young to a job that could be learned in thirty days or less, the ALJ limited Young to jobs with an SVP level of one or two. The parties agree that work with an SVP level of one or two constitutes "unskilled work." Doc. 11 at 5; Doc. 12 at 15; *see also* **Hulsey v. Astrue**, 622 F.3d 917, 923 (8th Cir. 2010); **Social Security Ruling (SSR) 00-4P**, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000).

Young argues that the ALJ's RFC limitation to a job that can be learned in thirty days or less—unskilled work—fails to account for his moderate limitations in concentration, persistence, or pace. Young suggests that *Newton* is directly on point. I disagree. *Newton* involved an RFC limitation restricting the claimant's ability "to perform highly skilled or technical work," which could allow for the claimant to perform all but the highest levels of skilled work (such as semi-skilled work)—as long as the work involved simple tasks, an additional limitation. The limitation to unskilled work here is more restrictive than the skill limitation found insufficient in *Newton*.

8

Although a limitation to "simple jobs" does not sufficiently account for a moderate limitation in concentration, persistence, or pace (as the Eighth Circuit held in *Newton*), a limitation to jobs involving "simple, repetitive, routine" tasks does. ***Howard v. Massanari***, 255 F.3d 577, 582 (8th Cir. 2001). By definition, unskilled work involves "simple duties that can be learned on the job in a short period of time" and requires "little or no judgment." **20 C.F.R. § 416.968(a)**. Guidance from the Social Security Administration further provides that "[t]he basic mental demands of . . . unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." **SSR 85-15**, 1983-1991 Soc. Sec. Rep. Serv. 343, 1985 WL 56857, at *4 (Jan. 1, 1985). Considering these descriptions of unskilled work, a limitation to unskilled work appears more akin to the limitation to "simple, repetitive, routine" tasks upheld in *Howard* than the limitation to "simple work" that is not "highly skilled or technical" struck down in *Newton*. I recommend finding that the ALJ's step-two findings of moderate limitations in concentration, persistence, or pace are not inconsistent with the ALJ's VE hypothetical and RFC determination limiting Young to unskilled work. *See Koenig v. Berryhill*, No. 4:16-cv-00556-NKL, 2017 WL 838092, at *7 (W.D. Mo. Mar. 3, 2017) ("An ALJ may account for deficiencies in concentration, persistence, or pace by limiting a claimant to jobs at a particular SVP level." (citing ***Vigil v. Colvin***, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ found at step three that Vigil has moderate difficulties in concentration, persistence, and pace . . . . The ALJ took these difficulties into account in formulating [the] RFC by limiting the skill level of his work with an SVP one or two.")); ***Hosch v. Colvin***, No. C15-2014-CJW, 2016 WL 1261229, at *5 (N.D. Iowa Mar. 30, 2016) ("[M]oderate limitations in concentration, persistence, or pace are consistent with the simple, routine, repetitive tasks involved in unskilled work."); *but see* ***Wilson v. Berryhill***, No. 4:18-CV-00446-JM-JTK, 2019 WL 449207, at *2 (E.D. Ark. Feb. 5,

9

2019) (holding that RFC limitation to unskilled work did not account for step-three finding of moderate limitation in concentration, persistence, or pace), *report and recommendation adopted,* 2019 WL 845409 (Feb. 21, 2019); ***Rojas v. Colvin***, No. 4:15-CV-00004-ODS-SSA, 2015 WL 9901286, at *2 (W.D. Mo. Jan. 13, 2015) (same).[6]

### B. ALJ's Failure to Adopt All of the Consultative Examiner's Limitations

Young argues that the ALJ erred by failing to adopt RFC limitations included in consultative examiner Dr. Guevara's medical opinion, or by otherwise failing to explain why the ALJ found Young less limited than Dr. Guevara. Dr. Guevara met with Young in August 2018 and concluded he suffered moderate limitations in his ability to work with people and moderate to severe limitations in his ability to use good judgment and respond appropriately to changes in the workplace. AR 519. She explained that the former limitation was based on Young's "poor temper control and trouble with a certain level of abstraction" and that the latter was based on Young having "trouble understanding situations that do not favor him and [being] willing to engage in illegal activity to a certain extent to meet his goals." *Id.* The ALJ assigned Dr. Guevara's opinion "significant weight," finding it "consistent with the medical evidence and with the record as a whole." AR 22.

The ALJ limited Young to jobs in which he would only have occasional contact with people, reflecting Dr. Guevara's social-interaction limitation. AR 19. And the ALJ's RFC limitation to unskilled work adequately accounted for Dr. Guevara's judgment limitation, since unskilled work, by definition, requires "little or no judgment." **20 C.F.R. § 416.968(a)**. But the ALJ did not include an RFC limitation related to Young's ability to respond appropriately to changes in the workplace, despite recognizing

---

[6] I recently addressed this same issue in a report and recommendation currently pending before the Honorable Chief Judge Leonard T. Strand. *See **Loeckle v. Saul***, No. 19-CV-3031-LTS-KEM, Doc. 17 (August 11, 2020).

that Dr. Guevara found Young limited in this area and suggesting agreement with Dr. Guevara. AR 22. Perhaps the ALJ thought, as the Commissioner argues, that the limitation to unskilled work adequately accounted for difficulties in responding to change. But as the Commissioner's own citation illustrates, unskilled work requires the ability "to deal with changes in a routine work setting." **SSR 85-15**, 1985 WL 56857, at *4. Thus, by limiting Young to unskilled work, the ALJ did not limit Young's ability to respond appropriately to changes in the workplace.

Young cites *Gann v. Berryhill*, 864 F.3d 947 (8th Cir. 2017), in support of his argument that the ALJ erred by failing to adopt all of Dr. Guevara's opined limitations. In that case, the ALJ assigned significant weight to the opinions of the state agency consultants but did not include their adaptive limitations in the VE hypothetical. *Id.* at 952-53. Because of this, the Eighth Circuit held that the VE testimony did not support the ALJ's step-five finding. *Id.* at 953. Relying on *Gann*, Judge Strand has held that when the only medical opinions in the record are from state agency consultants, and the ALJ assigns those opinions "great weight" and notes they are "consistent with the record as a whole," the ALJ errs by failing to adopt a limitation found by the state agency consultants or by otherwise failing to explain the omission. *See Block v. Saul*, No. C18-118-LTS, 2020 WL 1505566, at *6-7 (N.D. Iowa Mar. 30, 2020) (discussing *Burns v. Saul*, No. 18-cv-72-LTS (N.D. Iowa Jan. 10, 2020)).

Judge Strand distinguished *Gann*, however, in *Block v. Saul*. In that case, the ALJ found that the claimant did not suffer severe mental impairments at step two, which was supported by the medical opinions from the state agency consultants. *Id.* at *4-5. Relying on *Gann*, the claimant argued that the consultative examiner's opinion, which the ALJ had assigned "great weight," supported greater mental limitations than found by the ALJ. *Id.* at *6. The court affirmed the ALJ's decision, finding that the vague nature of the consultative examiner's opined limitations was insufficient evidence on its own to establish the claimant suffered from a severe mental impairment. *Id.* at *4-5. The court

11

distinguished *Gann*, noting that the consultative examiner's opinion was not the only medical opinion in the record and that the ALJ "adequately articulated reasons" for excluding from the RFC any additional limitations supported by the consultative examiner's opinion. ***Id.*** at *7.

The facts here are more similar to *Gann* and *Burns* than to *Block*. The ALJ assigned Dr. Guevara's opinion significant weight and found it consistent with the record, but nothing in the ALJ's opinion explains the ALJ's failure to include a limitation related to Young's ability to handle changes in the workplace. *See also **Johnson v. Comm'r of Soc. Sec.***, No. 17-CV-3045-LTS, 2018 WL 4868986, at *5 (N.D. Iowa Aug. 27, 2018) (collecting cases from district courts in the Eighth Circuit holding that remand is required "when the ALJ purportedly gives 'great weight' to the opinion of a state agency consultant but fails to adopt some of the limitations contained in that opinion without explanation"), *report and recommendation adopted,* 2018 WL 4489458 (Sept. 19, 2018). The only other medical opinions in the record addressing Young's mental limitations are from the state agency psychological consultants, who did not find Young suffered a severe mental impairment at all. The Eighth Circuit has held that an ALJ's RFC determination must be supported by some medical evidence from a medical professional, ***Hutsell v. Massanari***, 259 F.3d 707, 712 (8th Cir. 2001); and the ALJ cannot rely on the opinions of nonexamining state agency consultants about the effects of a claimant's impairments on his RFC when the consultants "did not even agree with the ALJ as to the existence *vel non* of those impairments," ***Lauer v. Apfel***, 245 F.3d 700, 704-05 (8th Cir. 2001). I recommend finding that the ALJ erred by failing to include a limitation in the VE hypothetical and corresponding RFC reflecting Dr. Guevara's opinion that Young would have difficulties adjusting to changes in a work setting.[7]

---

[7] The Commissioner argues that Young waived this argument and the one related to moderate

(Footnote continued . . .

*C. Cognitive Impairment*

Young argues that the ALJ should have found that he suffered a cognitive impairment at step two. During step two, the ALJ "determine[s] whether [a claimant] ha[s] a medically determinable . . . impairment[]" that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." **20 C.F.R. § 416.921**; *see also* **20 C.F.R. § 416.920a(b)(1)**. A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." **20 C.F.R. § 416.921**. If the ALJ determines the claimant suffers from a medically determinable mental impairment, the ALJ must next decide whether the impairment is severe by evaluating the degree of functional limitation caused by the impairment. **20 C.F.R. § 416.920a(b)-(d)**. An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities,"—for example, the ability to "[u]nderstand[], carry[] out, and remember[] simple instructions; . . . [u]se . . . judgment; . . . [r]espond[] appropriately to supervision, [coworkers,] and usual work situations; [or] . . . [d]eal[] with changes in a routine work setting." **20 C.F.R. §§ 416.920(c), 416.922**. An impairment is not severe if it "would have no more than a minimal effect on the claimant's ability to work." ***Dixon v. Barnhart***, 353 F.3d 602, 605 (8th Cir. 2003) (quoting ***Simmons v. Massanari***, 264 F.3d 751, 755 (8th Cir. 2001)); *accord* **20 C.F.R. § 416.920a(d)(1)**. The ALJ must apply a "special technique" to evaluate the severity of a mental impairment and consider the claimant's limitations in "four broad functional areas . . . : [u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." **20 C.F.R.**

---

deficiencies in concentration, persistence, or pace by not being sufficiently precise. The Commissioner's point is not well-taken; Young's brief clearly raises these issues and contains some of the more targeted arguments in a Social Security brief that I have seen.

13

**§ 416.920a(c)(3)**. Although subject to exception, as a general rule, if the claimant suffers no more than mild limitations in each category, the claimant's mental impairments are not severe. **20 C.F.R. § 416.920a(d)(1)**.

Here, the ALJ found that Young suffered from several severe physical and mental impairments (and performed the psychiatric review technique), but the ALJ did not evaluate whether Young suffered any sort of cognitive impairment. Young did not allege disability on that basis in his application for benefits, but at the administrative hearing, his attorney noted that Young "has had difficulties with behavioral issues and learning difficulties since he was in school," needed special education, and had an intelligent quotient (IQ) score of 78 in the sixth grade. AR 92-93; *see also* 355. In this appeal, Young additionally points to the following evidence from his time in school: that he repeated the first grade (AR 356), that the Iowa Tests of Educational Development (ITED), a standardized test, was "waived in [reading and] math" for Young to graduate high school (AR 388); and that a report from when Young was in the sixth grade reflects his past standardized tests "suggest low average to below average achievement and low average to below average cognitive functioning"(AR 353, 355). Young also relies on the results of some of Dr. Guevara's testing; Dr. Guevara ultimately concluded based on those tests that Young "appears to be functioning in the low average range of intelligence." AR 517.

The Eighth Circuit has recognized that the impairment of "[b]orderline intellectual functioning describes individuals with IQ [scores] between 71 and 84." *Hunt v. Massanari*, 250 F.3d 622, 624 (8th Cir. 2001) (quoting *Holz v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999)). This definition is consistent with the fourth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM), published in 1994 (DSM-IV). Am. Psychiatric Ass'n, *DSM-IV* 684 (1994). "A diagnosis of borderline intellectual functioning should be considered severe when the diagnosis is supported by sufficient medical evidence." *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007).

14

The Commissioner argues that Young's failure to mention any sort of cognitive impairment in his disability application supports that Young did not suffer a severe cognitive impairment. But, the Eighth Circuit has found error requiring remand when an ALJ failed to evaluate a claimant's intellectual functioning, even when "the claimant failed to assert explicitly—in either the initial application, at a hearing with an ALJ, or . . . in the record for the [Social Security Administration] Appeals Council—any mental impairments as a basis for disability benefits." *Gasaway v. Apfel*, 187 F.3d 840, 843 (8th Cir. 1999), *on reh'g,* 195 F.3d 345 (8th Cir. 1999). In *Gasaway*, the Eighth Circuit held that the ALJ should have considered whether the claimant suffered a cognitive impairment based on the following evidence: records from a vocational counselor reflected the claimant had "problems with learning"; treatment records reflected intellectual disability as an impairment "in their summary of [the claimant's] past medical history"; and the claimant's high school records from twenty-five years earlier showed the claimant took special education classes, perhaps graduated only by completing less requirements than necessary for a general diploma, and had a verbal IQ score of 69, "so low that she could presumptively be considered" intellectually disabled (the court noted, however, that this score was not "reliable enough to be used without question twenty-five years later"). *Id.* at 842-45 (citing *Thompson v. Sullivan*, 878 F.2d 1108, 1109-11 (8th Cir. 1989), in which the court sua sponte "directed the [Social Security Administration on remand] to consider the significance of a vocational evaluation . . . stating that the claimant was 'profoundly'" intellectually disabled).

In *Gasaway*, unlike here, the ALJ did not perform the psychiatric review technique or consider the claimant's mental limitations at all. *See id.; see also Nicola*, 480 F.3d at 886-87 (remanding when the claimant alleged borderline intellectual functioning as a severe impairment, but the ALJ failed to "conduct a psychiatric review technique analysis" or include any mental impairments as severe at step two); *Morgan v. Saul*, No. 4:13 CV 766 ACL, 2020 WL 1479124, at *6 (E.D. Mo. Mar. 26, 2020) (remanding for

ALJ to further consider cognitive impairment when ALJ found claimant suffered no severe mental impairments, but the claimant's school records showed she took special education classes and had IQ scores in the borderline intellectual functioning range); *Stephenson v. Saul*, No. C18-73-LTS, 2019 WL 4720989, at *4-8 (N.D. Iowa Sept. 26, 2019) (remanding for ALJ to further consider cognitive impairment when ALJ found claimant suffered no severe mental impairments and did not perform psychiatric review technique; claimant's school records reflected the claimant was in special education and had learning difficulties, and recent treatment records reflected "slow mentation"; and claimant alleged brain damage as the result of meningitis in disability application). There was also more evidence in *Gasaway* that the claimant had once been diagnosed with intellectual disability, since that impairment was listed in treatment records as part of the claimant's past medical history. Here, there is no evidence that any provider diagnosed Young with borderline intellectual functioning or intellectual disability, nor any evidence in current treatment records supporting Young suffers from a cognitive impairment. *Cf. Davis v. Astrue*, 545 F. Supp. 2d 973, 977, 987 (D. Neb. 2008) (holding that ALJ erred in failing to include borderline intellectual functioning as severe impairment at step two, despite claimant's failure to allege disability on this basis, when a psychological consultative examiner diagnosed claimant with borderline intellectual functioning after he scored a 76 on an IQ test); *Harper v. Colvin*, No. 1:14 CV 31 ACL, 2015 WL 5567978, at *5-7 (E.D. Mo. Sept. 22, 2015) (remanding for ALJ to further consider borderline intellectual functioning when consultative examiner assessed IQ scores in the borderline range and treatment records reflected claimant's intelligence was "below average" or "in the borderline range at best"); *Tanner v. Colvin*, No. 12-2308, 2014 WL 470740, at *4 (W.D. Ark. Feb. 6, 2014) (adopting report and recommendation) (holding that ALJ erred by failing to include borderline intellectual functioning as a severe impairment when treatment records reflected the claimant's IQ score was 70 and "[b]ased upon this testing,

the consulting examiner . . . found [the claimant] to be functioning in the 'borderline range of intelligence'").[8]

Young primarily relies on school records from more than fourteen years before the alleged disability onset date, including a twenty-year-old IQ score from when he was a child, to argue that he suffers from borderline intellectual functioning. No provider diagnosed Young with borderline intellectual functioning (or any other cognitive impairment), and Dr. Guevara, the consultative examiner, concluded that Young "appears to be functioning in the low average range of intelligence," not the borderline range. AR 517. I do not find that this constitutes "sufficient medical evidence" to support a diagnosis of borderline intellectual functioning such that the ALJ erred by failing to include it as a severe impairment. I further note that the fifth edition of the DSM, published in 2013 (DSM-5), does away with the old definition of borderline intellectual functioning based on IQ score, in part because "IQ measures are less valid in the lower end of the IQ range"; instead, the diagnosis depends on deficits in intellectual and adaptive functioning. *See* Am. Psychiatric Ass'n, "Intellectual Disability" and "Borderline Intellectual Functioning," *DSM-5* (2013), https://dsm.psychiatryonline.org. Here, the ALJ considered Young's intellectual and adaptive functioning when performing the psychiatric review technique, evaluated the evidence of Young's mental functioning, and ultimately limited Young to jobs that can be learned in thirty days or less (unskilled work) and that require only occasional contact with people. *See* AR 19, 23-24.

Young argues that the ALJ should have limited him to jobs involving only one- or two-step tasks (reasoning level one jobs).[9] Young suggests the ALJ would have

---

[8] I do not assign any significance to Young's failure to seek treatment for issues with cognitive functioning, as the Commissioner argues; as the cases illustrate, being born with a low IQ is not generally something that can benefit from any sort of mental-health treatment.

[9] The DOT assigns each job a "reasoning level" (the way it assigns each job an SVP level),

(Footnote continued . . .

included this RFC limitation if the ALJ had included borderline intellectual functioning as a severe impairment at step two, or if the ALJ had otherwise developed the record regarding Young's borderline intellectual functioning. I disagree. Dr. Guevara opined that Young suffered "[n]o impairment" in his ability to understand and follow instructions. AR 519. In function reports, Young reported being able to follow written and spoken instructions "well." AR 284, 303*; see also* AR 312. In addition, Young retained the mental functioning to work part time in a restaurant as a kitchen helper, a position requiring a reasoning level of two; although this employment did not rise to the level of substantial gainful activity (Young performed this work for less than six months, and he did not work many hours), Young testified that his physical impairments, not mental, limited his ability to work as a kitchen helper. AR 98-103, 413; **DOT § 318.687-010**. The record does not support that Young should be limited to jobs with a reasoning level of one.

I recommend finding that the ALJ did not err by failing to include borderline intellectual functioning as a severe impairment at step two or by otherwise failing to further develop the record regarding Young's cognitive functioning. *See Byes v. Astrue*, 687 F.3d 913, 916-17 (8th Cir. 2012) (holding that ALJ did not err in failing to include

---

which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance" and are ordinarily "obtained in elementary school, high school, or college," but "may be obtained from experience and self-study." **DOT, App. C**. Jobs with reasoning levels one through three require a claimant to:

- LEVEL 1 - Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
- LEVEL 2 - Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
- LEVEL 3 - Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*Id.*

18

borderline intellectual functioning as severe impairment at step two when the consultative examiner noted she "suspect[ed]" the claimant suffered either borderline intellectual functioning or a learning disability and diagnosed the claimant with a "rule out" diagnosis; the consultative examiner also concluded that the claimant had the capacity to cope with the mental demands of work as long as reading and writing were not required; and the claimant's activities of daily living and past work supported that any cognitive impairment was not severe).

### D. Failure to Fully Credit Young's Testimony Regarding the Need to Elevate Legs

At the administrative hearing, Young testified that he had surgery on his left knee in 2010, but he continues to wear a knee brace and suffer left knee pain, which makes it difficult for him to stand for long periods. AR 100-01. He explained that "at night, I've got to elevate it, just so I can move around in the next day," and testified that he places two or three pillows under his leg when sleeping. *Id.* When his attorney asked what would prevent him from doing a sit-down job, Young testified that he would "still have to elevate [his] legs." AR 102. His attorney asked whether Young's feet and left knee pain improved "when they're off the ground, when they're elevated at all," and Young responded that "[i]t helps a lot." AR 103. Young further testified that he spent "the majority of . . . time" in a recliner with his feet in the air. *Id.* Now, Young argues that the ALJ erred by failing to include a limitation in his RFC that he would need to keep his legs elevated during the workday, which the VE testified would preclude Young from working as a document preparer, weight tester, or addresser. AR 120.

When evaluating the weight to assign a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5)

functional restrictions." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *accord Polaski*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*,[10] 804 F.2d 456 (8th Cir. 1986). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black*, 143 F.3d at 386. The ALJ may not discredit the claimant's allegations based solely on the absence of objective medical evidence, but the ALJ may rest his credibility finding on "objective medical evidence to the contrary," *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002); or "inconsistencies in the record as a whole," *Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993). Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (quoting *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001)).

Here, the ALJ did not fully credit Young's testimony. AR 24. Young argues that the ALJ erred in discounting his testimony regarding the need to elevate his legs. Young points to a treatment record from March 2016 in which he complained of leg swelling that improved with elevation and requested a prescription for compression stockings. AR 487; *see also* AR 488 ("+1 pitting edema bilat[erally]" noted on objective examination). Young notes that subsequent treatment records reflect leg swelling on objective examination. *See* AR 567, 614, 616, 618, 620, 623, 625, 628 ("moderate lower leg edema"); AR 545, 572, 577, 590, 596 ("trace edema bilat"). The Commissioner notes that some of the treatment records Young relies on reflect only "trace" edema in his lower extremities. *See also* AR 500, 507 ("no pretibial edema"). The Commissioner also notes, as did the ALJ, that in August 2016 and April 2017, Young reported suffering "lower extremity swelling" occasionally, not constantly. AR 21, 544, 589; *see also* AR

[10] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. *Jones v. Callahan*, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

20

499, 506, 637 (denied lower extremity swelling in June and October 2015 and January 2017).

Young reported to a provider in September 2017 that "elevation" was an alleviating factor for his left knee pain. AR 576. But as the Commissioner notes, Young reported to the consultative examiner in September 2016 that he could "perhaps" sit for an hour at a time without mentioning the need to have his legs elevated. AR 554. The ALJ also noted that Young engages in activities of daily living that include driving his son to and from school, cooking by sitting on a stool, and shopping once a month for three hours at a time by using a motorized scooter—activities involving sitting without leg elevation. *See* AR 24, 96-97, 111, 282, 308-09, 519. Overall, the evidence supporting Young's need to elevate his legs is not so overwhelming that a reasonable mind could not have found otherwise. Accordingly, I recommend finding that substantial evidence supports the ALJ's finding that Young would not need to elevate his legs during the workday.

### E. Appointments Clause Challenge

Young argues that the ALJ's appointment to that position violates the Appointments Clause of the United States Constitution. The Eighth Circuit recently ruled that a Social Security claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration. *Davis v. Saul*, 963 F.3d 790, 794-95 (8th Cir. 2020), *petition for cert. filed*, 89 U.S.L.W. 3015 (U.S. Jul. 30, 2020) (No. 20-105). Because Young did not challenge the constitutionality of the ALJ's appointment at any point during the administrative proceedings, I recommend finding that Young forfeited his Appointments Clause challenge.

## III.    CONCLUSION

I respectfully recommend that the district court **reverse** the ALJ's decision, enter judgment in favor of Young, and **remand** for further proceedings.

**ENTERED** this 12th day of August, 2020.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa